## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

MELISSA HENNION,

      **Plaintiff,**

vs.                                   **Case No. 5:08cv336-RH/WCS**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D).   It is recommended that the decision of the Commissioner be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and remanded for further consideration.

**Procedural status of the case**

      Plaintiff, Melissa Hennion, applied for disability insurance benefits and supplemental security income benefits.  Plaintiff was 36 years old at the time of the administrative hearing on June 20, 2007, has or nearly has a two year associate arts

degree, was then attending Florida State University part-time in pursuit of a degree in

psychology, and has past relevant work as an administrative assistant, insurance office

manager, benefits clerk II, and customer-complaint clerk.  Plaintiff alleges disability due

to degenerative disease of the lumbar spine.  The Administrative Law Judge found that

Plaintiff has the residual functional capacity to perform sedentary work with a sit or

stand option and with other limitations, and can still do her past relevant work.  This

finding resulted in denial of the application for benefits.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.  Chester

v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a

scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable

person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler,

703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d

1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if

supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir.

2002).  "If the Commissioner's decision is supported by substantial evidence we must

affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,

1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial

deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211

(11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to

uphold the Secretary's decision by referring only to those parts of the record which

support the ALJ.  A reviewing court must view the entire record and take account of

evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairments?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

    5.     Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Evidence from the administrative hearing**

    Plaintiff testified that she is able to work at a computer for about one-half hour. R. 475.  She was taking college classes (ten hours a week), and during the one and one-half hour class, was allowed to sit and stand alternatively.  *Id.*  She felt that she could sit for only one-half hour to an hour without pain.  R. 479.  Plaintiff said that the pain comes from her lower back.  R. 478.  She said that she could sit for one or two hours on a soft couch, but would then need to lie down for five to ten minutes to stretch her back.  R. 479.  Plaintiff said she can stand for only about 10 minutes before having to sit down.  R. 478.  She said that mostly she must lie down for about 15 minutes, and then she can sit again for an hour or two.  R. 479.  She said she had tried a job sitting and standing alternatively for a six hour workday, but had difficulty walking to her car at the end of the day.  R. 480.

Plaintiff said that she does not walk much because walking is difficult.  R. 476.

When shopping for groceries, she said that she uses the cart for support.  R. 477.

Plaintiff said that her left leg bothers her more than her right.  R. 477.  Pain, she said,

shoots up her leg, and sometimes her left knee gives out.  *Id*.  She had not had a cane

or other assistive device prescribed, but she used a cane to walk from class to class in

school.  *Id*.  She said that her girl friend had to help her to dress and helped her

remember to take her medications, too.  R. 481-482.

Plaintiff said that she becomes groggy and disoriented when she continually

takes Flexeril, though the medication helps with sleep.  R. 480-481.  She also takes

Vicodin three times a day for pain.  *Id*.  She said that the medication makes it possible

for her to function, to go to classes and sit at home, but she constantly feels pain.  R.

482.

Plaintiff said she does no cooking or cleaning, depending upon her roommate.

R. 475-476.  She said that other than attending school, she watches television and

movies, sleeps, and either sits or lies down, depending upon the pain.  R. 476.  She

visits with friends at home at times.  R. 482.

**Medical evidence**

On October 11, 2002, Plaintiff was examined for a consultative orthopedic

evaluation by Samy F. Bishai, M.D.  R. 232.  She had had a slip and fall accident on

March 9, 2001, and after that accident, began to experience pain in her back.  *Id*.  She

was seen by Dr. McMillan, who recommended physical therapy, and Dr. Kovacs, who

prescribed medication.  *Id*.  Plaintiff said she continued to have back pain.  *Id*.  She said

she had not had any problems with her back prior to the accident.  R. 233.

Dr. Bishai found Plaintiff to be "in quite a bit of discomfort because of pain in her

back and left leg."  R. 233.  On examination, he noted:

> There is tenderness overlying the lumbar region of the spine in the
> midline.  There is paraspinal muscle spasm of severe intensity affecting
> the lumbar spine.  Straight leg raising test is 70 degrees right side and 80
> degrees left side.  Sciatic nerve stretching test is positive at 70 degrees on
> the right side and 80 degrees on the left side.  Neurological exam is
> negative.

R. 233.  Plaintiff had significant limitation (diminished 50%) in lumbar flexion, extension,

and right and left lateral bending and rotation.  R. 234.

Dr. Bishai also noted that the MRI of the lumbar spine on March 21, 2002,

"showed [a] moderate to large size central and right paramedian disc herniation" at L4-

L5, a large right paramedian and right lateral disc herniation at L5-S1, and "some

extension of disc material into the right lateral neural foramen."  R. 234.  His diagnosis

was lumbar disc syndrome with herniated lumbar disc and lumbosacral strain.  *Id.*  He

determined that Plaintiff had sustained a permanent partial impairment of 8% to the

whole person as a result of the accident.  *Id.*  He concluded:

> She will have functional limitations in her back and will need to avoid
> repetitive movements of the back.  She will need to avoid heavy lifting,
> stooping and bending.  She will also need too [sic] avoid prolonged
> standing or sitting.

R. 235.  He thought that she would need physical therapy, medications, and surgery, a

lumbar laminectomy and disc excision at L4-L5 and L5-S1.  *Id.*

On July 1, 2004, Plaintiff was examined on a consultative basis by Nitin Hate´,

M.D.  R. 236.  She reported that pain radiated to both legs to her feet, with occasional

paresthesias.  *Id.*  She said she last worked in 2003 as a manager for a storage facility.

*Id.*  She was not then taking any medication.  *Id.*  She appeared to be healthy, pleasant,

and comfortable.  *Id.*  Her gait was "normal with no localizing signs."  *Id.*  She could only

squat at 50%.  R. 237.  She used no assistive devices.  *Id.*  Plaintiff had normal muscle

strength in all major muscle groups, and her grip strength was normal.  *Id.*  She had

reduced range of motion in her thoracolumbar spine.  *Id.*  Dr. Hate´ noted the same disc

herniations noted by Dr. Bishai as revealed by MRI.  R. 237-238.  He noted positive

findings which "included restricted range of motion in the thoracolumbar spine, restricted

squatting and [positive] SLR [straight leg raising]."  R. 238.  He concluded:

> Given the history of herniated disc, she may have difficulty in strenuous
> activities, repetitive stooping and lifting weights.  She may be a surgical
> candidate and a surgical opinion may be helpful, particularly given her
> age, she would tolerate surgery better and she is anxious to return to
> work.

R. 238.

On May 3, 2005, Plaintiff was seen by Richard C. Smith, M.D.  R. 398.  Plaintiff

said she was not doing well, and continued to have radiating pain.  *Id.*  An MRI had

been performed on April 21, 2005.  *Id.* and R. 411.  The MRI revealed a shallow right

paracentral disc herniation at L1-2, a large right herniation with central, left paracentral

at L4-L5, with possible left L5 nerve root impingement and moderate to severe left

foraminal narrowing with disc material abutting the left L4 foraminal nerve root, and a

large right paracentral disc herniation with suspected right S1 nerve root impingement at

L5-S1.  R. 398.  Dr. Smith discussed "multiple treatment options" with Plaintiff, including

surgery, "specifically a laminectomy and fusion."  R. 397.  Plaintiff decided to proceed

with surgery.  *Id.*  On March 31, 2005, it was noted that Plaintiff still wished to proceed

with surgery, "but it is pending authorization," which presumably referred to

authorization by an insurer.  R. 394.  There is no evidence in the subsequent record that surgery was performed.

On May 4, 2005, Plaintiff was examined by Guillermo Marrero, M.D.  R. 353.  He noted that Plaintiff had been seen by four orthopedic physicians, who recommended physical therapy, and she attended physical therapy off and on for two years.  *Id*.  She was currently taking Vicodin and Flexeril.  *Id*.  Plaintiff said that the medications do help her, and when she is off the medications, her pain is 10 out of 10.  *Id*.  She was also taking Xanax.  R. 354.  Plaintiff said that she was going to school to finish her AA degree about ten hours a week.  She said that otherwise, she spent her days lying down and watching television.  *Id*.  She said she did no household work.  *Id*.  Dr. Marrero observed that Plaintiff's gait was slow while walking in the examination room, but she was well coordinated and had no gross neurologic deficit.  R. 355.  She had tenderness when touched in the lower back.  R. 356.  Plaintiff's upper body was not diminished in strength or muscle bulk.  *Id*.  She had no muscle atrophy in the lower extremity either, but her motor strength was diminished (3/5) on the left.  *Id*.  Dr. Marrero thought that:

> The MRI does not correlate very well with the physical findings.  The range of motion of her lumbar spine on flexion and extension was diminished as well as the left hip.  The number of hours that the patient could be expected to stand and walk is 6-8 hours with normal breaks inbetween [sic].  These limitations may be due to pain.  The number of hours that the patient could be expected to sit is 8 hours with normal breaks inbetween [sic]. . . .

R. 356-357.

On May 10, 2005, Plaintiff had a consultative mental status evaluation by Michael Harrell, Ph.D.  R. 361.  Dr. Harrell noted that in 2001, Plaintiff fell and later was

diagnosed with degenerative disc disease.  *Id.*  He reported that a year later, she was

involved in a motor vehicle accident and herniated additional discs.  *Id.*  Dr. Harrell said

that Plaintiff had been advised that she needs surgery but had not had surgery.  *Id.*  It

was noted that she no longer had health insurance.  *Id.*  Dr. Harrell said:

> Melissa arrived on time for her appointment, driven by her friend.  She
> was oriented 3X and dressed in casual daytime wear with adequate
> grooming and hygiene.  Melissa presented herself in a polite, direct
> manner and was generally cooperative in attitude.  She spoke in a clear
> voice with good diction.  Melissa demonstrated an intact ability to
> remember recent and remote dates and events with accuracy.  She
> represented generally logical thought processes with an appropriate
> expression.
>
> Melissa's mood was neutral and she did not show extremes of emotional
> tension, such as weeping.  Her demeanor and manner were generally
> appropriate, with good attention and concentration for interview.  Melissa
> was able to coordinate normally and did not require additional supports or
> aids for ambulation.  She appeared uncomfortable with extended sitting.

R. 362.  Plaintiff reported "chronic intermittent pain in her back and legs.  Her doctor has

suggested surgery to fuse herniated disks, but Melissa has no health insurance.  She is

involved in a lawsuit for her first injury, which may provide surgery if settled."  *Id.*  Dr.

Harrell's mental health diagnosis was depressive disorder, NOS, moderate, with

dysthymic and anxious features.  *Id.*

On June 3, 2005, Plaintiff underwent electromyography and nerve conduction

testing.  R. 407.  She had no tenderness to palpation over her lumbar paraspinal

muscles, her range of motion was not diminished in all planes, there was no muscle

atrophy in her low back or lower extremities, motor strength was 4/5 in the left ankle and

left knee, but 5/5 throughout the left lower extremity, but straight leg raising was positive

on the left.  *Id.*  Nerve conduction studies of the left lower extremity were normal.  *Id.*

Electromyography studies of the left lower extremity were consistent with chronic left radiculopathy, but with no evidence of denervation at this time.  *Id.*  There was no evidence of peripheral neuropathy.  R. 408.

On October 6, 2005, Plaintiff was seen by Raul A. Carril, PA., at the Florida Center for Orthopaedics.  R. 392.  He noted that she had herniated nucleus pulposus, low back pain, and radiculopathy, and he refilled her medications.  *Id.*  He said she ambulated with a normal reciprocal gait, and there was no tenderness on palpation of the paraspinal muscles.  *Id.*  He found her range of motion to be normal in flexion, extension, lateral bending, and rotation.  *Id.*  He found that she could toe and heel walk without difficulty, and straight leg was negative.  *Id.*  Contradictorily, Carril found that Plaintiff's paraspinal muscles bilaterally and at the sciatic notch were tender to palpation.  *Id.*  Also in contradiction to the earlier note, he found the range of motion of her lumbar spine to be decreased in all planes, and spasms were noted in the muscle during palpation.  *Id.*  He recommended conservative treatment, including home exercises.  *Id.*

On March 9, 2006, Dr. Bieda noted that Plaintiff had lower back pain (LBP) with herniated discs, and he refilled her prescription for Neurontin and Vicodin.  R. 430.  On March 23, 2006, on a day when Plaintiff sought treatment for sinus congestion, Dr. Bieda checked a box on his office notes form indicating that Plaintiff's back was normal.  R. 429.  But by December 18, 2006, he again noted that Plaintiff had chronic lower back pain with herniated discs.  R. 427.

On December 18, 2006, Plaintiff was again evaluated by Physician's Assistant Carril.  R. 422.  He conducted a lumbar spine examination, finding that Plaintiff had a

mildly antalgic gait, but her sensory function was within normal limits. *Id.* Lumbar muscle spasm was not present, but there was tenderness upon palpation, straight leg raising was positive bilaterally and Plaintiff had difficulty standing on her heels or toes. *Id.* Plaintiff's range of motion in the lumbar spine was decreased. *Id.* His impression was herniate nucleus pulposus, low back pain, and radiculopathy. *Id.* He recommended that Plaintiff be treated conservatively, and that this might include home exercises. R. 423.

On June 19, 2007, Physician's Assistant Carril filled out a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form. R. 452. He said that he thought that Plaintiff cannot ambulate at all on a sustained basis. *Id.* He said that Plaintiff must alternate between sitting and standing during a workday. R. 453. He said that this was due to a large herniated nucleus pulposus at L5-S1, a collapsed vertebra space, and compression of the nerve root. *Id.* He said that Plaintiff can never climb, balance, kneel, crouch, crawl, or stoop. *Id.* He thought that Plaintiff cannot sustain work activity for an 8 hour day with normal breaks for a 40 hour work week. R. 454. He considered to be credible Plaintiff's allegations of pain, assertions of fatigue, and side effects of medications. *Id.*

**Legal analysis**

### Whether the ALJ posed an incomplete hypothetical to the vocational expert at step four

The Administrative Law Judge posed several hypothetical individuals for the vocational expert. R. 486-488. She asked the expert to assume an individual between the ages of 32 and 36, able to perform sedentary work with a sit or stand option, and

able to only occasionally climb ladders, ropes, scaffolds, and stoop, and never crouch.

R. 488.  The vocational expert said that such a person could perform Plaintiff's past

relevant work as a tester, benefits clerk II, administrative assistant, customer account

specialist, and office manager.  *Id.*  Plaintiff argues that the hypothetical question to the

vocational expert was incomplete because it failed to include the non-exertional

limitation imposed by pain, causing a limitation upon Plaintiff's ability to perform the

mental demands of her past relevant work.  Doc. 11, p. 4.

      This argument places at issue the ALJ's findings as to the degree of pain

experienced by Plaintiff.  Pain and other symptoms reasonably attributed to a medically

determinable impairment are relevant evidence for determining residual functional

capacity.  Social Security Ruling 96-8p, p. 4.  Pain and other symptoms may affect

either exertional or non-exertional capacity, or both.  *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other
> symptoms, the claimant must satisfy two parts of a three-part test
> showing:  (1) evidence of an underlying medical condition; and (2) either
> (a) objective medical evidence confirming the severity of the alleged pain;
> or (b) that the objectively determined medical condition can reasonably be
> expected to give rise to the claimed pain.  *See Holt v. Sullivan*, 921 F.2d
> 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he
> must articulate explicit and adequate reasons for doing so.  *See Hale v.
> Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Failure to articulate the
> reasons for discrediting subjective testimony requires, as a matter of law,
> that the testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d
> 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  The reasons articulated for

disregarding the claimant's subjective pain testimony must be based upon substantial

evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532

(11th Cir. 1991).  It is not necessary that the ALJ expressly identify this circuit's pain

standard if his findings "leave no doubt as to the appropriate result" under the law.
Landry v. Heckler, 782 F.2d 1551, 1553-1554 (11th Cir. 1986).

The Administrative Law Judge identified this circuit's pain standard.  R. 19.  She
found that Plaintiff suffers from some "discomfort," necessitating work with an option to
sit or stand alternatively "to relieve discomfort."  *Id.*  But after reviewing all of the
evidence, she concluded that Plaintiff has no other limitations caused by her experience
of pain.  R. 19-22.

The starting point for this analysis is to ask whether the medical record
establishes an underlying medical condition, and whether "the objectively determined
medical condition can reasonably be expected to give rise to the claimed pain."  This
record certainly does.  The latest MRI, conducted on April 21, 2005, revealed that
Plaintiff a shallow right paracentral disc herniation at L1-2, a *large* right herniation with
central, left paracentral at L4-L5, *with possible left L5 nerve root impingement* and
*moderate to severe left foraminal narrowing with disc material abutting the left L4
foraminal nerve root*, and a *large* right paracentral disc herniation *with suspected right
S1 nerve root impingement at L5-S1*.  R. 398 (emphasis added).  This is an underlying
medical condition that could reasonably be expected to give rise to the claimed pain.
Significant spinal fusion surgery has been recommended.  There is also objective
evidence of pain from several of the examinations.

In the process of articulating reasons to find Plaintiff's pain testimony to be
lacking in credibility, the ALJ first noted a discrepancy in the evidence as to whether
Plaintiff's ability to walk is so impaired that she must use an assistive device.  She noted
that although Plaintiff testified that she uses a cane to move around at school, Dr. Hate´

found that she had a normal gait and walked without an assistive device.  R. 20.  She

also noted evidence from Dr. Marrero and Dr. Harrell.  The record does contain the

evidence referenced.  On July 1, 2004, Dr. Hateˊ said Plaintiff's gait was "normal with no

localizing signs," and she did not use an assistive device.  R. 236-237.  On May 4,

2005, Dr. Marrero observed that Plaintiff's gait was slow while walking in the

examination room, and there was no mention of a cane.  R. 355.  The psychologist, Dr.

Harrell, said that Plaintiff did not require supports for ambulation.  R. 362.  Further, on

October 6, 2005, Physician's Assistant Carril said that Plaintiff ambulated with a normal

reciprocal gait.  R. 392.  On December 18, 2006, P.A. Carril said that Plaintiff had a

mildly antalgic gait.  R. 422.  But Plaintiff did not testify that she used a cane all of the

time.  She only said she used it occasionally, especially to ambulate at school.  None of

the medical examiners asked Plaintiff to stand for a lengthy period of time, or to walk a

long distance, and two examiners, even upon a brief observation, found Plaintiff's gait to

be impaired.  This is a weak reason to discount Plaintiff's testimony.

  The ALJ discounted Plaintiff's testimony that she needs to lie down after sitting

from one-half to two hours.  R. 20.  The basis for this was Dr. Howell's [sic, Harrell's]

observation that she was uncomfortable only with *extended* sitting.  *Id.* (emphasis

added).  Dr. Harrell said: "She *appeared* uncomfortable with extended sitting."  R. 362

(emphasis added).  In other words, the finding was based upon Dr. Harrell's

observations during the examination.  The "entire procedure" with Dr. Harrell "took

approximately 3 hours."  R. 361.  That Plaintiff was uncomfortable after sitting for three

hours is consistent with her testimony, though whether or not she had to lie down after

sitting for that long is not reflected in Dr. Harrell's findings.  In any event, this is not substantial evidence in the record to discount Plaintiff's testimony.

The ALJ discounted Plaintiff's testimony as to her need to lie down because "the medical evidence also fails to show that the claimant had been required to lie down in order to relieve pain after sitting."  R. 20.  I have been reading social security medical records for 20 years, and I have never seen a notation by a treating source in a medical record instructing a patient to lie down when the pain from sitting becomes too intense.  On the contrary, physicians often instruct a patient to exercise.  This reasoning is not supported by substantial evidence in the record and is not sufficient to discount Plaintiff's pain testimony.

The ALJ discounted Plaintiff's pain testimony because she said she could not lift a gallon of milk, pointing out that Dr. Hate´ said that she had a normal neurological examination, normal ranges of motion, and had normal grip and motor strength in her upper extremities.  R. 20.  Lifting is not performed solely with the muscles of the upper extremity.  While Dr. Hate´ made these findings regarding Plaintiff's upper extremity, he found that she had reduced range of motion in her thoracolumbar spine, was restricted in squatting, had a positive straight leg raising test, and said:  "Given the history of herniated disc, she may have difficulty in strenuous activities, repetitive stooping *and lifting weights*."  R. 237-238 (emphasis added).  The findings of Dr. Hate´ are not substantial evidence in the record to find a conflict with Plaintiff's testimony as to her ability to lift a gallon of milk.

The ALJ also pointed to the findings of Dr. Marrero, that Plaintiff had full strength in her upper extremity.  R. 21.  This reasoning is flawed as well.  Full strength in the

upper body coupled with severe pain in the lower back logically might result in an inability to lift an eight pound weight, a gallon of milk.  Further, Dr. Marrero made no findings as to Plaintiff's ability to lift a weight.  R. 353-357.

The above are the only findings discussed by the ALJ as a basis to discount Plaintiff's pain testimony.  R. 20-21.  After determining that Plaintiff was "not entirely credible," the ALJ said that Plaintiff's "daily activities are not limited to the extent that one would expect from an individual totally disabled by pain."  R. 21.  The ALJ noted that Plaintiff attended school, could shop for a few items at the grocery store, could prepare cereal for breakfast, watch television and movies, prepare a simple meal, maintain attention, and follow instructions.  R. 21.  Plaintiff testified that she attended school for about ten hours a week and spent the rest of the time at home, alternating between sitting and lying down.  She said that she had difficulty walking to class, whether or not she needed a cane to do so, and that after sitting in class for a few hours, she needed to lie down.  While it is tempting to conclude that a relatively young person who can concentrate enough to attend school part-time is capable of attending 40 hours of week, every week, the logic falters when one tries to imagine a job where the worker has to frequently lie down to relieve discomfort.  That is why courts are skeptical of reliance upon evidence of a claimant's simple daily activities to find that they are capable of competitive work.  Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work."); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (the court must consider the entire record when determining whether the evidence of a claimant's daily activities is substantial evidence for the conclusion that

she retains the residual functional capacity to work); <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by Lewis's treating physicians."); <u>Parker v. Bowen</u>, 793 F.2d 1177, 1180 (11th Cir. 1986) (when considering daily activities, the entire record must be considered, including the claimant's testimony that she had to lie down after two hours of such work); <u>Foote v. Chater</u>, 67 F.3d 1553, 1561 (11th Cir. 1995) (a conclusory citation to a claimant's "daily activities" as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing).

In summary, the reasons given by the ALJ to find Plaintiff's pain testimony to be not credible are not supported by substantial evidence in the record.  As noted earlier, "[f]ailure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."   <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002).  Thus, Plaintiff's testimony must now be accepted as true.

While acceptance of the testimony as true is the rule, that does not necessarily warrant an order by this court awarding benefits.  The ALJ should, in the first instance, accept Plaintiff's testimony as true and then determine whether her residual functional capacity based upon that testimony would preclude all forms of work.  Further, Plaintiff is a relatively young person, and surgery has been recommended.  At her age, surgery might be very successful in relieving her pain so that she could go back to work.

Defendant argues that "Plaintiff had never undergone back surgery, despite the fact it had been offered to her."  Doc. 14, p. 7.  Defendant states that the "record suggests that her health insurance would not grant clearance for the procedure."  *Id.*, citing R. 394.  There, it was noted that "authorization" for surgery was "still pending."  R. 394.  Dr. Harrell noted that Plaintiff had not had surgery, and that she no longer had health insurance.  R. 361.  Defendant cites several cases for the proposition that "[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."  Doc. 14, p. 8.  Defendant then suggests that the ALJ's decision should be affirmed because, presumably, Plaintiff does not need surgery (because she has not had it) and Plaintiff can manage her pain medications.  *Id.* Defendant argues that "such conservative treatment [pain medication] gave her at least partial relief from her pain . . . reasonably suggests that her pain, while present, was not of disabling severity."  *Id.*

The Commissioner may deny benefits "when a claimant, without good reason, fails to follow a prescribed course of treatment that could restore her ability to work." McCall v. Bowen, 846 F.2d 1317, 1319 (11th Cir. 1988); Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988); Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990). "In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored," and this finding itself must be supported by substantial evidence.  Dawkins, 848 F.2d at 1213 (citations omitted).  Poverty excuses noncompliance.  *Id.*

Defendant's argument that Plaintiff's pain is adequately managed with pain medication is unpersuasive since the ALJ's rejection of Plaintiff's testimony as to the severity of the pain she experiences, despite pain medication, is not supported by substantial evidence in the record.  This leaves surgery as the only viable treatment option.  The record reflects that at least by 2005, Plaintiff wanted surgery but apparently could not obtain it because she had no insurance and could not afford surgery.  She may have had surgery by now, or her condition may have worsened without surgery.  Then again, her condition might be much better, given her young age.  It is recommended that the case be remanded for the ALJ to makes these determinations.

A final issue is whether the ALJ erred in failing to give any weight to the opinion of Physician's Assistance Carril.  While Carril was not a treating physician, he was a treating source who had seen Plaintiff more often than the consultative physicians, who performed one-time examinations.  Carril's opinion, however, seems somewhat at odds with his treatment notes discussed above.  The ALJ, however, did not cite these few contradictions as a reason to discount the opinion of treating source Carril.  R. 22.  It is not enough to say that Carril's opinion is not afforded controlling weight because he is not a physician.  R. 22.  Of course he is not a physician, but he examined and treated Plaintiff and his opinion should either have been given some weight or rejected for good reasons.  On remand, the opinion of Carril should be reconsidered in light of all of the evidence.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge did not correctly follow the law and was not based upon substantial evidence in the record.  The decision of the Commissioner to deny Plaintiff's application for benefits should be reversed and the case remanded for reconsideration and to obtain additional evidence to determine whether Plaintiff has had surgery and, if so, to what extent the surgery improved her impairment, or if not, whether her impairment has changed in severity.  In making these determinations, the ALJ now must accept as true Plaintiff's prior pain testimony and must incorporate those limitations into her residual functional capacity determination and into any hypothetical posed to a vocational expert.  The ALJ also must reconsider the opinion of Physician's Assistant Carril, giving reasons supported by substantial evidence in the record for the weight that is to be given to Carril's opinion.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g), and the case be **REMANDED** to the Commissioner to determine whether Plaintiff has had surgery and, if so, to what extent the surgery improved her impairment, or if not, whether her impairment has changed in severity.  It is further **RECOMMENDED** that the court **ORDER** that in making these determinations, the ALJ must accept as true Plaintiff's prior pain testimony, must incorporate those limitations into her residual functional capacity determination and into any hypothetical

posed to a vocational expert, and must give reasons supported by substantial evidence

in the record for the weight that is to be given to Physician's Assistant Carril's opinion.

**IN CHAMBERS** at Tallahassee, Florida, on June 5, 2009.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.